WICKER, J.
| ,This appeal arises out of a judgment of the district court granting a declinatory exception of lack of subject matter jurisdiction in favor of defendant, Hospital Service District No. 1 of the Parish of St. Charles (the “SCPH District”), and dismissing without prejudice the declaratory action that plaintiff, Jefferson Parish Hospital Service District No. 2 (“EJGH”), filed against the SCPH District. Although the SCPH District initially objected to EJGH’s attempt to open the designated healthcare facility within the bounds of St. Charles Parish’s hospital service district, the SCPH District has since withdrawn its objection to this facility, and the record contains no evidence that EJGH is considering further expansion within the boundaries of the SCPH District. Accordingly, we affirm the judgment of the district court and find that the court did not have subject matter jurisdiction because there is presently no justiciable controversy between the SCPH District and EJGH.
FACTUAL AND PROCEDURAL BACKGROUND
In order to understand the alleged dispute between the parties,, it is necessary to understand the legal framework under which both hospital districts operate.
In 1950, the state legislature passed La. R.S. 46:1051, which empowered the police juries of the parishes to create hospital service districts tasked with the duties and functions of owning and operating hospitals. Washington Parish Police Jury v. Washington Parish Hosp. Serv. Dist. No.1, 152 So.2d 362, 366 (La. App. 1 Cir. 1963), writ denied, 244 La. 669, 153 So.2d 883. Specifically, under this statute,
[t]he police juries of parishes are authorized and empowered, upon their own initiative, to form and create one or more hospital service districts within the respective parishes, or with agreement among police juries concerned, to combine two or more parishes into a single hospital service district with such names as the police juries may designate, and, in so doing, police juries may create hospital service districts whose boundaries overlap those of other hospital service districts.
laLa. R.S. 46:1051(A).
Pursuant to the authority granted by La. R.S. 46:1051, St. Charles Parish enact *700 ed Code of Ordinances, Chapter 11, Article I, Section 11-11, creating the SCPH District,
a hospital service district to be known as “Hospital Service District No. 1 of the Parish of St. Charles, State of Louisiana,” and containing within its boundaries and corporate limits all of the territory within the boundaries and corporate limits of the parish as constituted On the adoption date of this Code.
Likewise, Jefferson Parish enacted Code of Ordinances, Chapter 17, Article II, Section 17-17, creating EJGH,
a hospital service district within the parish comprising and embracing all that territory within the following described boundaries:
All that portion of the Parish of Jefferson lying on the east side or the left descending bank of the Mississippi River, which portion comprises all of the wards numbered 7, 8, 9 and 10 of the Parish of Jefferson and is bounded on the east by the Parish of Orleans, on the west by the Parish of St. Charles, on the north by Lake Pontchartrain and on the south by' the north bank of the Mississippi River.
In 1984, the Legislature enacted the Enhanced Ability to Compete Act, La. R.S. 46:1071-76. Recognizing that “hospital service districts are presently at a competitive disadvantage,” the Legislature expressly sought “to enhance the ability of a hospital service district to compete effectively and equally in the market for health care services.” La. R.S. 46:1071.
EJGH and the SCPH District disagree over the interplay between La. R.S. 46:1051 et seq. and the Enhanced Ability to Compete Act—that is, La. R.S. 46:1071-76. The SCPH District contends that La. R.S. 46:1051 prohibits a hospital service district, like; EJGH, from operating a healthcare facility outside- of its own geographic boundaries unless it obtains the consent of the hospital service district in which it seeks to operate. In contrast, EJGH argues that, through the Enhanced Ability to Compete Act, the Legislature “amended and supplanted” the | ..¡provisions of La. R.S. 46:1051, removing “those limitations that would prevent a hospital service district, such as EJGH, from establishing satellite clinics outside of its home service district.”
In 2015, EJGH opened East Jefferson Primary Care Boutte (the “Boutte Clinic”), a primary care medical practice centrally located in Boutte,1 Louisiana, which is on the West Bank of the Mississippi River, situated within the SCPH District. On August 25, 2015, the SCPH District notified EJGH that it objected to EJGH’s operation of the Boutte Clinic within the boundaries of the SCPH District and expressed its intention “to take action to stop the unauthorized operation of [the Boutte Clinic].” Thereafter, EJGH filed an action seeking a declaratory judgment affirming its position that the Enhanced-Ability to Compete Act, La. R.S, 46:1071-76, authorized EJGH to open, own, and/or operate a satellite location within the SCPH District. Jefferson Parish Hospital Service District No.-2, Parish of Jefferson, State of Louisiana v. Hospital Service District No. 1 of the Parish of St. Charles, No. 80, 587, Twenty-Ninth Judicial District Court, Parish of St. Charles (“EJGH /”). The SCPH District reconvened against EJGH, asserting its position that EJGH must obtain the consent of the SCPH District in order to open and operate healthcare facilities in St. Charles Parish.
According to EJGH’s petition in the instant matter, on December 22, 2015, the SCPH District transmitted a letter to EJGH, withdrawing its objection to EJGH’s operation of the Boutte Clinic and requesting that EJGH voluntarily dismiss *701 its declaratory judgment action without prejudice. The following day, EJGH submitted a letter to the SCPH District, questioning whether the SCPH District “consented] to [EJGH] opening its own satellite facility in St. Charles Parish and concurred] in [EJGH’s] position that [the SCPH District’s] consent is not required for [EJGH] to open one or more satellite locations in St. Charles RParish.” The SCPH District did not respond to this inquiry but, instead, filed a motion to dismiss without prejudice its own reconven-tional demand and a declinatory exception of lack of subject matter jurisdiction, seeking dismissal without prejudice of EJGH’s declaratory judgment action. At the March 7, 2016 hearing on the SCPH District’s motion to dismiss and exception, the district court refused to consider EJGH’s proffer—contained in the instant record— in which EJGH expressly revealed its plan to open and to operate a new clinic centrally located on the East Bank of St. Charles Parish in Destrehan (the “Destre-han Clinic”). Finding that a justiciable controversy no longer existed between EJGH and the SCPH District because the SCPH District had withdrawn its objection to the Boutte Clinic, on March 10, 2016, the district court in EJGH I granted the SCPH District’s declinatory exception of lack of subject matter jurisdiction and dismissed EJGH’s declaratory judgment action and the SCPH District’s reconven-tional demand without prejudice. EJGH did not seek review of this judgment or of the district court’s refusal to consider its proffer concerning the Destrehan Clinic.
On March 30, 2016, the SCPH District transmitted a letter via e-mail to EJGH, voicing the SCPH District’s objection to EJGH’s plan to own and to operate the Destrehan Clinic and demanding that EJGH “immediately cease any further activity in St. Charles Parish related to [the Destrehan Clinic].” The next day, EJGH filed a second petition seeking a declaratory judgment that
despite the protestation of the SCPH District, EJGH is authorized and permitted by law to open, own and operate healthcare facilities in St. Charles Parish in order to provide healthcare services under the Enhanced Ability To Compete Act (LSA-R.S. 46:1071 et seq.) and that it need not solicit the consent of the SCPH District in order to do so....
EJGH also alleged that its “expanded offering of healthcare services is and will be accomplished through the establishment of satellite healthcare facilities on both the IsEast and the West Banks of St. Charles Parish.” To that end, EJGH explained, it had opened the Boutte Clinic on the West Bank of St. Charles Parish, and it intended to own and to operate a medical practice at the Destrehan Clinic on the East Bank of St. Charles Parish. Critically, beyond asserting its right to open facilities in St. Charles Parish without the SCPH District’s consent, EJGH did not indicate that it is considering or contemplating further expansion within St. Charles Parish.
On May 18, 2016, the SCPH District sent EJGH a letter withdrawing its objection “to the operation of the primary care clinic identified in the proffer which is located at 169 Longview Drive, Suite C, in Destrehan, Louisiana” and requesting that EJGH join it in submitting a joint motion to dismiss the declaratory action without prejudice. Several days later, on May 23, 2016, the SCPH District filed a declinatory exception of lack of subject matter jurisdiction, arguing that an actual controversy no longer exists between the SCPH District and EJGH because the SCPH District “has no objection to the Destrehan Clinic.” In opposition, EJGH argued that its petition for declaratory judgment was not solely confined to the conflict concerning its operation of the Destrehan Clinic. *702 Rather, EJGH contended that, more broadly, “there still remains an issue as to whether EJGH’s operation of a healthcare facility in St. Charles Parish is subject to SCPH’s consent.”
At the hearing on the SCPH District’s exception, Robert Hinyub, Jr., vice-president of legal services and corporate compliance officer, testified on behalf of EJGH. When questioned directly whether there is “any other facility or operation of [EJGH] currently occurring in St. Charles Parish other than the Destrehan and Boutte clinics,” Mr. Hinyub at first refused to answer the question “because it would reveal strategic plans under the Enhanced Ability to Compete statute.” After the district court commented that the pleadings contain “no allegation that | (¡[EJGH is] interested in opening anything,” Mr. Hinyub affirmed that there is no other actual operation other than the Destrehan Clinic. At the conclusion of this hearing, the district court determined that there was no longer an existing actual controversy between the SCPH District and EJGH to which subject matter jurisdiction could attach:
In the declaratory judgment, the request for a declaratory judgment, East Jefferson General Hospital is asking this Court to essentially determine how this law is to be applied. And as much as I understand East Jefferson’s position wanting certainty in the manner in which it intends to proceed, the Court just fails to see a justiciable controversy which I can render anything other than an advisory opinion. And I think I’m outside the bounds of what I’m allowed to do in this job.
Therefore, I’m going to grant the exception of lack of subject matter jurisdiction and dismiss the Petition for Declaratory Judgment without prejudice.
Gentlemen, I understand your dilemma. I understand your desire, your client’s desire, for certainty. I think I’m out of bounds if I rule, if I take any action on the petition as it’s styled and the facts that are alleged.
Thereafter, the district court signed a judgment granting the SCPH District’s exception of lack of subject matter jurisdiction and dismissing EJGH’s declaratory judgment action without prejudice.
From this judgment, EJGH filed a timely devolutive appeal.
DISCUSSION
The central issue in this matter is whether there remains a justiciable controversy between EJGH and the SCPH District when there is no evidence in this record suggesting EJGH’s consideration of future expansion into the SCPH District such that there is a reasonable expectation that the alleged violation will recur.
In its first assignment of error, EJGH argues that “because one or more legal errors interdicted the fact finding process, the manifest error' standard is no longer 17applicable and the appellate court should make its own independent de novo review of the record.” Because an exception of lack of subject matter jurisdiction raises a question of law, we conduct de novo review. Ryan Gootee Gen. Contr., LLC v. Plaquemines Parish Sch. Bd. & One Constr., Inc., 15-325 (La.App. 5 Cir. 11/19/15), 180 So.3d 588, 595. To the extent that EJGH challenges the factual findings of the district court, we apply manifest error review, as we do not find the district court erred as a matter of law. Cannizzaro v. Am. Bankers Ins. Co., 12-1455 (La.App. 4 Cir. 7/10/13), 120 So.3d 853, 856.
EJGH raises two assignments of error concerning the district court’s judgment granting the SCPH District’s declinatory exception of lack of subject matter jurisdiction.

*703
Assignment of Error Number 1

First, EJGH argues that the district court “erred in failing to find a real, justi-ciable controversy in the case at bar.” Essentially, EJGH argues that the district court framed the “controversy” at issue far too narrowly as a dispute simply over a “brick and mortar” location. On the contrary, EJGH contends that the dispute in this case involves whether or not it must obtain the SCPH District’s consent each time it plans to open a new healthcare facility in St. Charles Parish.
In Louisiana Associated Gen. Contrs. v. State ex rel. Div. of Admin., Office of State Purchasing, 95-2105 (La. 3/8/96), 669 So.2d 1185 (“LAGC’), the Louisiana Supreme Court, with Justice Catherine D. Kimball writing for the majority, addressed the principle of justiciable controversy in what remains the Court’s most thorough analysis of the issue. The merits of that case involved the constitutionality of the Louisiana Minority and Women’s Business Enterprise Act, La. R.S. 39:1951 et seq. Before reaching the merits, the Court addressed the |sthreshold question of whether the case, in its posture before the Court, presented a justiciable controversy or whether it was moot.
In 1994, the Louisiana Health Care Authority (the “State”) advertised for bids for the Perdido Clinic capital renovation project (the “Perdido Project”) which the State designated as a minority set-aside project in accordance with La. R.S. 39:1951 et seq., such that only minority business enterprise contractors could bid on the project. Plaintiff, Louisiana Associated General Contractors, Inc. (“LAGC”), filed a “Petition for Declaratory and Injunctive Relief’ which sought, among other things, to have La. R.S. 39:1951 et seq. declared unconstitutional. The district court issued a temporary restraining order restraining the State from treating the Perdido Project as a minority set-aside project and from awarding any other public works contracts as set-aside projects under R.S. 39:1951. Thereafter, the State voluntarily withdrew the pending Perdido Project bid request and rebid the contract without the minority set-aside designation. After the parties stipulated that the State planned to set-aside future contracts under the Act, the State filed a “Motion to Dismiss on Grounds of Mootness.” The district court denied the motion and determined, on the merits, that the Act was unconstitutional. The defendants filed a direct appeal with the Louisiana Supreme Court.
After determining that LAGC, as a state-wide trade association of construction contractors as opposed to an aggrieved individual contractor, had standing to pursue the declaratory judgment action, the Court examined the question of justici-ability. In its analysis, the Court turned first to the Louisiana declaratory judgment statutory construct, reviewing the purpose, scope and breadth of declaratory judgments in Louisiana:
Under La. Code Civ. Proc. art. 1872, “[a] person .. .whose rights, status, or other legal relations are affected by a statute ... may have determined any question of construction or validity arising under the ... statute ... and obtain a declaration of rights, status, or other legal relations thereunder.” The purpose of a declaratory judgment action |Bis to “settle and afford relief from uncertainty and insecurity and respect to rights, status, and other legal relations.” La. Code Civ. Proc. art. 1881.
669 So.2d at 1191. The Court emphasized that, while the declaratory judgment code articles are to be “liberally construed and administered,” an action can be brought only by a person having a real and actual interest which he asserts. Id. (citing La. C.C.P. arts 1881, 1876, and 681). Further *704 more, “[a] person is entitled to relief by declaratory judgment when his rights are uncertain or disputed in an immediate and genuine situation and the declaratory judgment will remove the uncertainty or terminate the dispute.” Id. at 1191 (quoting In re P.V.W., 424 So.2d 1015, 1020-21 n.10 (La. 1982)). Turning next to the definition of “justiciable controversy,” the Court first pointed out that, while federal decisions on standing and justiciability are persuasive, justiciability under the Federal Constitution may be more restrictive than Louisiana’s jurisprudentially and statutorily based rule. Id. at 1192. While Article III of the United States Constitution limits the federal judicial power to only “cases and controversies,” the Louisiana Constitution contains no comparable limitation. Id. Instead, in Louisiana, the “requirement of a justiciable controversy and its concomitant prohibition of advisory opinions arises from jurisprudence and the various procedural laws which apply depending on the type of action brought.” Id. Focusing upon Louisiana’s jurisprudentially created justi-ciable controversy rule and exhortations against abstract judicial decisions, the Court defined “justiciable controversy” as an “existing actual and substantial dispute, as distinguished from one that is merely hypothetical or abstract [or moot], and a dispute which involves the legal relations of the parties who have real adverse interests ...Id. at 1193. In the context of a declaratory judgment action,
A “justiciable controversy” connotes, in the present sense, an existing actual and substantial dispute, as distinguished from one that is merely hypothetical or abstract, and a dispute which involves the legal I ^relations of the parties who have real adverse interests, and upon which the judgment of the court may effectively operate through a decree of a conclusive character. Further, the plaintiff should have a legally protectable and tangible interest at stake, and the dispute presented should be of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.
Id. (quoting Abbott v. Parker, 259 La. 279, 249 So.2d 908, 918 (La. 1971)). As a matter of settled law, “courts will not decide abstract, hypothetical or moot controversies, or render advisory opinions with respect to such controversies. In order to avoid deciding abstract, hypothetical or moot questions, courts require cases submitted for adjudication be justiciable, ripe for decision and not brought prematurely.” Id. (citing St. Charles Parish School Board v. GAF Corporation, 512 So.2d 1165, 1170-71 (La. 1987)).
With this foundation in mind, the Court addressed the State’s argument that its decision to remove the minority set-aside designation from the contract giving rise to the action rendered the matter moot. Focusing on the principle of “mootness,” the Court reasoned,
A “moot” question connotes an issue that has been deprived of practical significance and made abstract or purely academic. American Waste [& Pollution Control Co. v. St. Martin Parish Police Jury, 627 So.2d 158, 162 (La. 1993)]. A “moot” case is one. in which a judgment can serve no useful purpose and give no practical relief; Robin v. Concerned Citizens for Better Education in St. Bernard, Inc., 384 So.2d 405[, 406] (La. 1980); and when “there is no reasonable expectation that the alleged violation will recur and when interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.” Khosravanipour v. Department of Transportation and Development, 644 So.2d 823, 826 (La. App. 1st Cir. 1994), writ denied, 94-2729 (La. 1/6/95), 648 So.2d 930.
*705 669 So.2d at 1193. The Court concluded that, although the State struck the set-aside designation from the Perdido Project bid request, a justiciable controversy existed. “[A] defendant’s voluntary cessation of a challenged practice does not deprive a ... court of its power to determine the legality of the practice.’’ Id. at 1194 (quoting City of Mesquite v. Aladdin’s Castle, 456 U.S. 283, 289, 102 S.Ct. 1070, 1074, 71 L.Ed.2d 152, 159 (1982). If a defendant voluntarily stops allegedly illegal conduct, that change does not make the case moot, for the defendant would then be free to return to his old ways. 669 So.2d at 1194. Defendant,, in such a case, must show that “there is no reasonable expectation that the wrong will be repeated” and “interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.” Id. at 1194-95. When both conditions are satisfied, it may be said that the case is moot despite the fact the defendant voluntarily stopped his illegal conduct, because neither party has a legally cognizable interest in the final determination of the underlying questions of fact and law. Id. at 1195. Applying these principles, the Court concluded that the State’s decision. to remove the set-aside designation from the Perdido Project contract did not render the case moot because a determination of the constitutionality of the Act would terminate the controversy, the two sides were in adverse positions, and both sides had a significant interest in achieving a successful resolution of the case. Although the State had removed the designation with respect to the particular contract from which the matter originally arose, the Court determined that it was not the contractors’ inability to bid on any particular public works contract that was at issue. Rather, the controversy involved the operation of the statute itself which established a barrier prohibiting members of a particular class from bidding equally on public contracts. In reaching this conclusion, .two factors were most significant to the Court. First, the State had unequivocally expressed its intention to designate other contracts as minority set-aside -projects. Thus, the case was not based upon a hypothetical or theoretical contingency. Second, the Act was mandatory as to all State agencies with the State subject to a mandamus action should it fail to designate minority set-aside contracts pursuant to the Act. Where the law in question mandates a challenged action to occur, plaintiffs case was not moot since a violation of plaintiffs constitutional rights 112was “in no way hypothetical or speculative.” LAGC, 669 So.2d at 1194 (quoting Blanchette v. Connecticut General Ins. Corps., 419 U.S. 102, 143, 95 S.Ct. 335, 358, 42 L.Ed.2d 320, 353 (1974). ‘Where the inevitability of the operation of a statute against certain individuals is patent, it is irrelevant to the existence of a justiciable controversy that there will be a time delay before the disputed provisions will come into effect.” Id.
We find this seminal case to be highly instructive, albeit distinguishable, from the present matter.. While LAGC involved the constitutionality of a .statute under the Equal Protection Clause of the United States Constitution’s Fourteenth Amendment, here the disagreement was over competing interpretations of a statutory scheme. Next, the Act at issue in LAGC was mandatory, which supported the conclusion that the prospect that the alleged violation of constitutional rights would recur was neither hypothetical nor speculative. Finally, the record in LAGC contained the State’s stipulation that it would continue to apply the minority set-aside provisions of La. R.S. 39:1951 et seq. Therefore, it. was abundantly clear .that there would be more future state construction contracts containing the challenged provision. . ■ .
*706 In the present ease, there is no constitutional question. Next, unlike the Act at issue in LAGC, La. R.S. 46:1051 does not mandate that St. Charles Parish require EJGH to obtain its permission for EJGH to expand further into St. Charles Parish. While the State in LAGC would have been subject to a mandamus action if it failed to implement and to enforce the challenged Act, the SCPH District could choose not to assert its perceived right to require permission without any such repercussions. Finally, unlike the record in LAGC which contained the State’s clear stipulation that it intended to issue other contracts containing the challenged minority set-aside provision, the record before us does not raise a reasonable expectation that this dispute between EJGH and the SCPH District will recur. We 11Hdo not find it to be outcome determinative that there is currently no EJGH facility in the SCPH District to which the District objects. However, we find no justiciable controversy in this case where there is not one scintilla of evidence in the record to suggest that EJGH is contemplating further expansion within the SCPH District such that we can reasonably- expect this issue might recur.
While this is the second declaratory judgment action between these parties raising the same issue of statutory construction—both filed by EJGH after the SCPH District expressed its objection to an EJGH clinic to which the District subsequently consented in the wake of litigation—this sequence of events alone does not signal a further recurring issue. In opening its two clinics in the SCPH District, EJGH explained it meant for these measures to address the large number of St. Charles Parish residents who choose to obtain their health care services at EJGH or who, as EJGH employees participating in the hospital’s self-insured group health plan, are generally required to obtain covered health services at EJGH. Like many other parishes up and down the Mississippi River, St. Charles Parish is situated on both the East and the West Banks of the river. The general “river related culture” manifests itself in residents’ widely held preference for remaining on their respective river banks, with East Bank residents seeking services from East Bank providers while West Bank residents seek services from West Bank providers. The Boutte Clinic is centrally located roughly in the middle of St. Charles Parish’s West Bank and in the most populous area of the St. Charles Parish West Bank. Likewise, the Destrehan Clinic is geographically located in the center of St. Charles parish’s East Bank and in the most populous area of the St. Charles Parish East Bank. With the opening of these two centrally located clinics, EJGH appears to have met its stated goals. Any future potential skirmishes between EJGH and the SCPH District about further EJGH expansion into St. Charles Parish are entirely theoretical at this point. Where we can discern no | uevidence in the record that further litigation may ensue between the parties on this issue, we find no justiciable controversy to which our jurisdiction can attach.
We do not, however, suggest that EJGH must disclose its strategic plans, which are protected from disclosure by the Enhanced Ability to Compete Act, La. R.S. 46:1073, in order to create a justiciable controversy. Clearly, the law does not require EJGH to violate rights established under its provisions in order for subject matter jurisdiction to exist. See MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 134, 127 S.Ct. 764, 775, 166 L.Ed.2d 604, 619 (2007) (“The rule that a plaintiff must destroy a large building, bet the farm, or (as here) risk treble damages and the loss of 80 percent of its business before seeking a declaration of its actively contested legal rights finds no support in Article III.”). *707 The question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. MedImmune Inc., 549 U.S. at 127, 127 S.Ct. 764. There is no formula for showing the existence of an actual controversy. In this specific case, the two facilities EJGH presently operates seem to have met its current goals, and there is no indication in the record, however vague, regarding EJGH’s future interest in expanding into St. Charles Parish. Considering very carefully the facts and circumstances of this case in its current posture, we cannot discern an existing actual and substantial dispute, as distinguished from one that is merely hypothetical or abstract, such that subject matter jurisdiction attaches.
EJGH argues that, even though there is no longer any dispute related to its two existing facilities, the court’s jurisdiction is not necessarily defeated because it is “capable of repetition, yet evading review.” In support, EJGH points to Richmond Newspapers v. Virginia, 448 U.S. 555, 568, 100 S.Ct. 2814, 2820, 65 L.Ed.2d 973, 981 (1980). In Richmond Newspapers, the United States Supreme |iaCourt recognized that “its jurisdiction is not necessarily defeated by the practical termination of a contest which is short-lived by nature.” Id. If the underlying dispute is “capable of repetition, yet evading review,” it is not moot. Id. To meet that test, two conditions must be satisfied: “(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again.” Gannett Co. v. DePasquale, 443 U.S. 368, 377, 99 S.Ct. 2898, 2904, 61 L.Ed.2d 608, 620 (1979). We find this exception is inapplicable in this matter because the statutory disagreement between EJGH and the SCPH District is not “short-lived by nature.” Unlike the dispute in Richmond Newspapers involving press access to a criminal trial, see 448 U.S. at 563, 100 S.Ct. 2814, the resolution of this disagreement is not a matter of circumstance but of choice. Moreover, as previously discussed, we can discern no evidence that EJGH is considering further expansion in St. Charles Parish such that it may be subjected to the same action again.
We find that EJGH’s first assignment of error is meritless.

Assignment of Error Number 2

Second, EJGH alleges that the district court erred in concluding that the SCPH District’s “limited consent” to the new facility in Destrehan rendered moot the dispute between EJGH and the SCPH District. We disagree. While the SCPH District’s May 18, 2016 letter specifically identifies the Destrehan Clinic by means of the proposed facility’s address, neither this letter nor EJGH’s proffer which the SCPH District references in this letter limits the consent to “a specific type of healthcare facility operated by a specific entity at a specific physical address.” Rather, the SCPH District advises, without limitation, that “the District does not object to the operation of the primary care clinic identified in the proffer which is 116located at 159 Longview Drive, Suite C, in Destrehan, Louisiana.” More importantly, however, EJGH does not allege or suggest at any point that it is contemplating changing the location of the facility, the type of services provided, or the specific entity operating the facility. Accordingly, we find this assignment of error to be meritless.
While we sympathize with EJGH as it attempts to obtain some clarity concerning *708 its rights under the Enhanced Ability to Compete Act, we are constrained by the record. EJGH vigorously highlights the many disadvantages from which Louisiana public hospital service districts suffer as a result of changes in the medical delivery industry. As it relates to this matter, EJGH argues that it operates at a competitive disadvantage against myriad national and regional private hospital service corporations, such as Ochsner, which operate without constraint across parish and state lines. While private hospitals with no boundaries can extend their networks by taking advantage of the public infrastructure already in place in more rural areas, larger public hospital service districts are threatened with the prospect of having to obtain the consent of their competitors in order to expand their operations. In this case, the St. Charles Parish Hospital, owned by the SOPH District, contracted with. Ochsner to run its public hospital.[1] EJGH alleges that Ochsner, its biggest competitor, now seeks . to use La. R.S. 46:1051 either to force EJGH to reveal its strategic plan or to block EJGH from effectively competing with it. The merits of this matter are not before us, and these arguments are best addressed to the Louisiana Legislature.
[^CONCLUSION
Accordingly, we affirm the district court’s judgment, granting the SCPH District’s declinatory exception of lack of subject matter jurisdiction and' dismissing EJGH’s declaratory judgment action without prejudice.
AFFIRMED

. We are aware that Ochsner has entered into similar contracts with other public hospital districts. See Hospital Serv. Dist. No. 2 v. Hospital Serv. Dist. No. 1, 91-1792 (La.App. 1 Cir. 6/29/98), 716 So.2d 168, 169.