5216 OPERATIONS, LLC D/B/A
5216 TABLE AND TAPS

VERSUS

STATE OF LOUISIANA, DEPARTMENT OF
REVENUE, OFFICE OF ALCOHOL AND
TOBACCO CONTROL

NO. 21-CA-520

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 816-089, DIVISION "M"
HONORABLE SHAYNA BEEVERS MORVANT, JUDGE PRESIDING

April 06, 2022

**JOHN J. MOLAISON, JR.**
**JUDGE**

Panel composed of Judges Jude G. Gravois,
Marc E. Johnson, and John J. Molaison, Jr.

**AFFIRMED**
 **JJM**
 **JGG**

**DISSENTS WITH REASONS**
 **MEJ**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Alexis Barteet
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
5216 OPERATIONS, LLC D/B/A 5216 TABLE AND TAPS
    Jill A. Gautreaux

COUNSEL FOR DEFENDANT/APPELLANT,
STATE OF LOUISIANA, DEPARTMENT OF REVENUE, OFFICE OF
ALCOHOL AND TOBACCO CONTROL
    Jon Francis Carmer, Jr.
    Linda Pham-Kokinos
    Heather M. Royer

AMICUS CURIAE,
STATE OF LOUISIANA, DEPARTMENT OF JUSTICE
    Jeffrey M. Landry
    Benjamin W. Wallace
    Elizabeth B. Murrill

**MOLAISON, J.**

In this matter, the appellant, State of Louisiana Department of Revenue, Office of Alcohol and Tobacco Control, appeals the granting of a preliminary injunction in favor of the appellee, 5216 Operations, LLC. For the reasons that follow, we affirm the district court's ruling.

## FACTS AND PROCEDURAL HISTORY

In March of 2020, after declaring a statewide public health emergency, Governor John Bel Edwards began to establish a series of executive orders which rendered business restrictions in the state related to the SARS-CoV-2 ("COVID") virus global pandemic.[1] Relevant to the instant matter, Executive Department Proclamation Number 17 JBE 2021 "COVID-19 Public Health Emergency Phase 2 of Resilient Louisiana" was issued on February 10, 2021, directing measures "necessary to protect the health and safety of the people of Louisiana," including limitations on nonessential and other businesses, a face covering order, and an authorization to the Board of Elementary and Secondary Education to issue a policy for following requirements for reopening school facilities. More specifically, bars were restricted from selling or serving alcohol after 11:00 p.m., and those establishments, at limited capacity, could only serve socially-distanced patrons seated at tables while appropriately masked. 17 JBE 2021 §2(C)(4) and §3.

The appellee, 5216 Operations, LLC d/b/a 5216 Table and Taps ("Table and Taps"), is the owner of a bar located within Jefferson Parish, which held an alcohol permit issued by the appellant, the Louisiana Department of Revenue, Office of Alcohol and Tobacco Control ("ATC"), and operated under a "conditional

---

[1] The Governor declared a public health emergency on March 11, 2020 in Proclamation Number 25 JBE 2020. The authority for these executive orders originates under the Louisiana Constitution of 1974, the Louisiana Homeland Security and Emergency Assistance and Disaster Act (La. R.S. 29:721, *et seq.*), and the Louisiana Health Emergency Powers Act (La. R.S. 29:760, *et seq.*).

restaurant" license for "on premises consumption" while Governor Edwards' executive orders were in effect.

The record before us indicates that on February 16, 2021, two agents from the ATC entered into Table and Taps for the purpose of conducting a "compliance check." The ATC agents observed "an absence of table side service on Business's premises, with Business allowing bar service, with Business at overcapacity, with Business's patrons standing and congregating while consuming alcohol, with some of its patrons dancing and with its patrons and employees not practicing social distancing and not wearing mandated face covering." Accordingly, the ATC issued a Notice of Suspension to Table and Taps on February 17, 2021, which summarily suspended[2] Table and Taps' alcoholic beverage permits pending an administrative hearing set for February 25, 2021.[3]

Waiving the administrative hearing, on March 1, 2021, Table and Taps entered into a "Commissioner's Order"/consent decree with the ATC in which Table and Taps pled no contest to the charges. The terms of the consent decree imposed a 45-day suspension, with 30 days deferred, and a probationary period which extended for "as long as businesses under ATC's jurisdiction are subject to state/local emergency COVID restrictions issued pursuant to either the Louisiana Homeland Security and Emergency Assistance and Disaster Act and/or Louisiana Heath Emergency Powers Act." A violation of any mandate contained within an

---

[2] La. R.S. 26:93(E) allows the commissioner to order a summary suspension of a permit in accordance with La. R.S. 49:961(C) which provides for an exception to the requirement for "notice by mail to the licensee of facts or conduct which warrant the intended action, and the licensee is given an opportunity to show compliance with all lawful requirements for the retention of the license[, i]f the agency finds that public health, safety, or welfare imperatively requires emergency action, and incorporates a finding to that effect in its order. . . These proceedings shall be promptly instituted and determined."

[3] The Notice claims that Table and Taps violated the following statutes: La. R.S. 26:90(A) (13) and R.S. 26:286(A)(13)(f) "for permitting ... improper conduct or practices on the licensed premises;" La. R.S. 26:90(A)(9) "for having unclean and unsanitary conditions on the premises" ; and La. R.S. 26:91(A)(l) and R.S. 26:287(A)(8) "for failing [to] maintain qualifications required in R.S.26:80 and 26:280."

Executive Order and/or Proclamation would be considered a probation violation. A monetary penalty of $1000 was also imposed.[4]

On March 26, 2021, Table and Taps filed the underlying Petition for Declaratory Judgment and Motion for Temporary Restraining Order, Preliminary Injunction and Permanent Injunction at the Twenty-Fourth Judicial District Court. Following a hearing on April 15, 2021, the trial court granted Table and Taps' petition for a preliminary injunction.[5]  The court thereafter granted the ATC's timely motion for appeal.

## ASSIGNMENTS OF ERROR

On appeal, the ATC sets forth the following assignments of error:

1) The trial court erred in issuing the preliminary injunction without Table and Taps having to demonstrate irreparable harm under the *Jurisich* jurisprudential exception;

2) The trial court erred in finding that the ATC did not have the authority to enforce the governor's proclamations under La. R.S. 26:792(3);

3) The trial court erred in ruling that the specific statute applicable to this matter was La. R.S. 29:721, et seq. and the concomitant governor's proclamations, and that Title 26's provisions were the general ones, and;

4) The trial court erred in ruling that the exclusive penalty for violations of COVID related executive orders and/or proclamations issued by the Governor's Office is contained within La. R.S. 29:724(E).

## LAW AND ANALYSIS

Under La. C.C.P. art. 3601, "[a]n injunction shall issue in cases where irreparable injury, loss or damage may otherwise result to the applicant, or in other cases specifically provided by law."  *Richard v. Bourgeois*, 19-494 (La. App. 5 Cir. 3/18/20), 293 So.3d 790, 793-94.  The appellate court reviews the granting or

---

[4] We note that the terms of the consent decree did not restrict Table and Taps' right to subsequently challenge the legality of the ATC's action against it.

[5] A written judgment granting the preliminary injunction was rendered on May 5, 2021. The judgment also disposed of other actions heard on April 15, 2021, denying ATC's Motion to Strike Ronald Carazo's affidavit; overruling ATC's exceptions of prescription, res judicata, and no cause of action; and denying ATC's Motion to Stay.  The judgment also found the ATC's motion to dissolve the temporary restraining order to be moot.

denial of a preliminary injunction under the manifest error standard. *Boh Bros. Constr. Co. v. Par. of Jefferson*, 20-472 (La. App. 5 Cir. 6/2/21), 325 So.3d 500, 504, *writ denied*, 21-00951 (La. 10/19/21), 326 So.3d 259, *and writ denied*, 21-00950 (La. 10/19/21), 326 So.3d 261.

## *A showing of irreparable harm*

In its first assignment, the ATC contends that the trial court erred in granting a preliminary injunction without first making a finding that Table and Taps would be irreparably harmed. Conversely, Table and Taps argues that such a showing was unnecessary because it "sought to enjoin ATC from taking an action that it lacks the power to take." Neither the trial court's May 5, 2021 Order and Preliminary Injunction, nor the transcript of the April 15, 2021 hearing, demonstrate whether the court considered irreparable harm as a factor in granting the preliminary injunction. Under similar circumstances, where there is no express finding on this element, other courts of review have looked to the pleadings and the record itself to determine whether a party had sufficiently articulated a basis to support the trial court's grant of the injunction.[6]

An injunction is a harsh, drastic, and extraordinary remedy, and it should only be issued where the mover is threatened with irreparable loss or injury without adequate remedy at law. *Lafreniere Park Found. v. Friends of Lafreniere Park, Inc.*, 97-152 (La. App. 5 Cir. 7/29/97), 698 So.2d 449, 452, *writ denied*, 97-2196 (La. 11/21/97), 703 So.2d 1312. The *prima facie* standard of proof to obtain a preliminary injunction is less than that required for a permanent injunction. *Smith v. Brumfield*, 13-1171 (La. App. 4 Cir. 1/15/14), 133 So.3d 70, 74. However, a showing of irreparable harm is not required in cases where the conduct sought to be restrained is unlawful, as when the conduct sought to be enjoined

---

[6] See, for example, *Forrester v. Bruno*, 18-0648 (La. App. 4 Cir. 5/1/19), *writ denied*, 19-01033 (La. 10/1/19), 280 So.3d 168.

constitutes a direct violation of a prohibitory law. *See Jurisich v. Jenkins*, 99-0076 (La. 10/19/99), 749 So.2d 597, 599;[7] *City of Baton Rouge v. State, ex rel. Dep't of Soc. Servs.*, 07-0005 (La. App. 1 Cir. 9/14/07), 970 So.2d 985, 990. As explained by the Fourth Circuit:

> Specifically, in *Jurisich v. Jenkins*, 99-0076 (La. 10/19/99), 749 So.2d 597, the Supreme Court established an exception to the irreparable harm requirement for instances when the plaintiff asks for a prohibitory injunction that seeks only to order compliance with a prohibitory law. The requisite showing of irreparable injury is dispensed with "when the conduct sought to be restrained is unconstitutional or unlawful, i.e., when the conduct sought to be enjoined constitutes a direct violation of a prohibitory law and/or a violation of a constitutional right." *Jurisich*, 99-0076, p. 4, 749 So.2d at 599, *citing to South Cent. Bell Tel. Co. v. Louisiana Pub. Serv. Comm'n*, 555 So.2d 1370 (La. 1990). Thus, under *Jurisich*, "[o]nce a plaintiff has made a *prima facie* showing that the conduct to be enjoined is reprobated by law, the petitioner is entitled to injunctive relief without the necessity of showing that no other adequate legal remedy exists." 99-0076, 749 So.2d at 599.
>     This jurisprudential rule, however, requires three findings by the court before a plaintiff can circumvent the irreparable harm requirement: first, that the conduct that is sought to be enjoined violates a prohibitory law (whether an ordinance or a statute or the constitution); second, that the injunction seeks to restrain conduct, not order it; and third, that the petitioner has met the low burden of making a *prima facie* showing that he is entitled to the relief sought. *See Faubourg Marigny Imp. Ass'n, Inc. v. City of New Orleans*, 15–1308, p. 15–16 (La. App. 4 Cir. 5/25/16), 195 So.3d 606, 616–617.

*Constr. Diva, L.L.C. v. New Orleans Aviation Bd.*, 16-0566 (La. App. 4 Cir. 12/14/16), 206 So.3d 1029, 1035, *writ denied*, 17-0083 (La. 2/24/17).

In the instant case, Table and Taps' petition sought an injunction seeking to restrain ATC's conduct on the basis that "the ATC has exceeded the authority vested in it by applicable law." In similar cases, such as *Jurisich, supra,* the Supreme Court has held that a party's challenge to a State agency's action as

---

[7] In *Jurisich*, the holders of oyster leases for State-owned water bottoms sought an injunction against the Secretary of Louisiana Department of Wildlife and Fisheries to prevent him from terminating their respective leases. The lessees asserted, in part, that the Secretary had exceeded his legislative authority in failing to renew the existing oyster leases without the inclusion of certain contractual clauses. In agreeing with the leaseholders, the Supreme Court recognized that the leaseholders' particular cause for seeking the preliminary injunction did not require them to demonstrate irreparable harm.

exceeding its authority does not require a showing of irreparable harm prior to the granting of a preliminary injunction. Therefore, after reviewing the record and finding a *prima facie* showing that Table and Taps is entitled to the relief sought, as described below, we find no merit to this assignment of error.

## *The applicable law*

As a threshold issue, we will first address the ATC's third assignment of error that the trial court erred in its determination of which law governs the instant matter. In summary, the ATC argues its action of suspending Table and Taps' alcohol permit based upon restrictions set forth in 17 JBE 2021 was permissible under La. R.S. 26:791, *et seq.* While the ATC claims that Title 26's provisions are the more specific laws to be applied to alcohol-permitted businesses, it also states that "the relevant proclamations covered more than just alcohol permitted establishments." This argument fails to acknowledge that the conduct prohibited by the mandate are specific health and safety rules related to COVID, rather than those related to alcoholic beverages. As discussed more fully below, the specific violations found by the ATC in this case are found in 17 JBE 2021's COVID restrictions. It is only by interpreting and applying Title 26's laws in a very broad and general manner can they encompass the behavior in the mandate, which was not illegal or actionable prior to the prohibitions prior to the prohibitions contained in the mandate. Even giving the ATC the benefit of the doubt, this would lead to the scenario where two laws govern the same issue. Special law prevails over general law in a particular matter to which the special law applies. *Kearns v. City of New Orleans*, 160 So. 470 (La. App. Orl. 1935). In that situation, we would look to the specific provisions of 17 JBE 2021, rather than the general provisions of La. R.S. 26:791, *et seq. Arabie v. CITGO Petroleum Corp.*, 10-2605 (La. 3/13/12), 89 So.3d 307, 312-13, *citing McGlothlin v. Christus St. Patrick Hospital*, 10-2775 (La. 7/1/2011), 65 So.3d 1218, 1228-29.

Having determined that the trial court did not err in finding that 17 JBE 2021 controls, we will next address the ATC's second assignment of error relating to the ATC's authority to enforce the governor's proclamations under La. R.S. 26:792(3).

### *The Governor's executive orders issued under LHSEADA*

In the Louisiana Homeland Security and Emergency Assistance and Disaster Act (La. R.S. 29:721, *et seq.*) ("LHSEADA"), the legislature has delegated to the Governor the responsibility "for meeting the dangers to the state and people presented by emergencies or disasters." In meeting this responsibility, the Governor may issue executive orders, proclamations, and regulations having the force and effect of law. La. R.S. 29:724(A). The Governor is further charged with the preparation and maintenance of a homeland security and state emergency operations plan and the promulgation of standards and requirements for local and interjurisdictional disaster plans. La. R.S. 29:726(B) and (E)(3). *City of Baton Rouge v. State, ex rel. Dep't of Soc. Servs.*, 07-0005 (La. App. 1 Cir. 9/14/07), 970 So.2d 985, 993. Recently, federal courts have acknowledged the legitimate government interest in the Governor's orders related to curbing the spread of COVID in Louisiana.[8]

### *Authorized enforcement of the Governor's orders*

The Louisiana Constitution allows the legislature the ability to delegate ministerial or administrative authority, conferring upon administrative officers in the executive branch the power to "fill up the details" by prescribing administrative rules and regulations. *State v. Alfonso*, 99-1546 (La. 11/23/99), 753 So.2d 156, 161-62, as *amended on reh'g in part* (12/7/99), *citing Adams v. State Dep't of Health*, 458 So.2d 1295, 1298 (La. 1984). In the instant case, the administrative

---

[8] *See 910 E Main LLC v. Edwards*, 481 F. Supp. 3d 607, 618 (W.D. La. 2020), *aff'd sub nom. Big Tyme Invs., L.L.C. v. Edwards*, No. 20-30526, 2021 WL 118628 (5th Cir. Jan. 13, 2021).

authority to enforce 17 JBE 2021 is found in section 5 of the executive order, which reads, "The Governor's Office of Homeland Security and Emergency Preparedness and the State Fire Marshal are directed to ensure compliance with this order, and are empowered to exercise all authorities pursuant to La. R.S. 29:721, *et seq*. and La. R.S. 29:760, *et seq*."[9] The legislature directed the Governor's Office of Homeland Security and Emergency Preparedness "pursuant to the Administrative Procedure Act, [to] adopt such rules and regulations as are necessary to implement his authority under the provisions of this Chapter and such authority as the governor shall designate to him pursuant to the provisions of this Chapter and the Louisiana Homeland Security and Emergency Assistance and Disaster Act." La. R.S. 29:767.

Thus, on the face of the mandate, the ATC is not recognized as an administrative entity that is charged with the duty of enforcing the Governor's COVID mandates. It is a well-established principle of statutory construction that absent clear evidence of a contrary legislative intention, a statute should be interpreted according to its plain language. *See*, *United States v. Apfelbaum*, 445 U.S. 115, 121, 100 S.Ct. 948, 952, 63 L.Ed.2d 250 (1980).

In *State v. Alfonso,* the Louisiana Supreme Court explained that "even when the Legislature has properly delegated to an agency certain administrative or ministerial authority, the regulations promulgated by the agency may not exceed the authorization delegated by the Legislature. An agency exercising delegated authority is not free to pursue any and all ends, but can assert authority only over those ends which are connected with the task delegated by the legislative body."

---

[9] In contrast, section 6 authorizes and directs other "departments, commissions, boards, agencies and officers of the state, or any political subdivision thereof. . .to *cooperate* in actions the state may take." 17 JBE 2021 (emphasis added).

753 So.2d at 162.[10]   Thus, our inquiry begins with a review of the authority

granted to the ATC by the legislature.

*ATC's enabling statutes*

As provided in La. R.S. 26:791, the ATC was created as a division within

the Louisiana Department of Revenue and Taxation.  La. R.S. 26:792 specifies the

power and authority of the ATC commissioner as follows:

> (1) The issuance and renewal of permits required by law for
> persons engaging in the business of dealing in beverages of high and
> low alcoholic content, provided that no wholesale permit shall be
> issued or renewed without the applicant's first furnishing evidence to
> the commissioner that the bond required under R.S. 26:348 has been
> secured;
> (2) The issuance of orders for the suspension or revocation of permits
> issued to persons engaging in the business of dealing in beverages of high or
> low alcoholic content, and all hearings thereon shall be conducted by the
> commissioner in accordance with the provisions of R.S. 26:98 through R.S.
> 26:108, appeals from his rulings to be made directly to any court of
> competent jurisdiction;
> (3) All other provisions of law regarding beverages of high or low
> alcoholic content, except as hereinafter specifically provided.
> (4) Investigating and enforcing the provisions of this Title against
> unlicensed persons engaged in activities which require a permit pursuant to
> this Title.

Read together, the ATC's enabling statutes offer no provision for the agency to

participate in enforcement of health provisions under the circumstances presented

herein.  While the ATC argues that section (3) grants inherent authority to regulate

alcohol, the conduct seeking to be enforced does not fall under specific regulation

of the "alcoholic beverages" but rather applies to seating capacity, social

distancing, and face covering.  Similar to *Piazza's Seafood World, LLC v. Odom*,

---

[10] Very recently, in *Nat'l Fed'n of Indep. Bus. v. Dep't of Lab., Occupational Safety & Health Admin.*, 142 S.Ct. 661, 665 (2022), the U.S. Supreme Court found an executive agency of the federal government, the Occupational Safety and Health Administration ("OSHA"), which falls under the purview of the U.S. Department of Labor, was not acting within its authority under 29 U.S.C. § 655(b) (directing the Secretary to set "occupational safety and health standards" (emphasis added)); § 655(c)(1) (authorizing the Secretary to impose emergency temporary standards necessary to protect "employees" from grave danger in the workplace) when it sought to impose an emergency temporary standard mandating that employers with more than 100 employees require the employees to undergo COVID-19 vaccination or take weekly COVID-19 tests at their own expense and wear a mask in workplace.  The Court found the Act did not plainly authorize the mandate as it "empowers the Secretary to set workplace safety standards, not broad public health measures. . .which falls outside of OSHA's sphere of expertise."

07-2191 (La. App. 1 Cir. 12/23/08), 6 So.3d 820, 827-28, a state agency cannot act when "authority to do so is simply not provided for under the existing statutory scheme." In that case, the Commissioner of the Department of Agriculture and Forestry was trying to enforce a regulation to test seafood for an antibiotic deemed to be a public health risk. The First Circuit, while "recogniz[ing] the Commissioner's laudable goal of inspecting and regulating the content of seafood," found the enabling statutes did not give the Commissioner that authority which was reserved by statute to another state agency, the Louisiana Department of Health and Hospitals. *Id.*

On appeal the ATC contends, however, that the authority for its action against Table and Taps originates generally from the 21st Amendment to the U.S. Constitution, as well as a body of federal and state law[11] which provides that a state's interest in regulating the sale of alcohol extends to the places in which it is sold "to prevent adverse effects on public health, welfare, and morals." More specifically, the ATC has the power to withhold, revoke, and suspend permits to sell alcoholic beverages "for causes specified in this Chapter" under La. R.S. 26:94.[12] In its answer to the petition, in paragraph 12, the ATC admits that it represented that it had the authority to enforce COVID restrictions "to the extent that the ATC has the authority to regulate the premises of its permit holders and has the duty to ensure that its permit holders abide by and comply with all applicable laws and regulations, including mandates which have the same force as

---

[11] To support this proposition, the ATC cites to the following cases: *California v. LaRue*, 409 U.S. 109 (1972); *New York State Liquor Auth. v. Bellanca*, 452 U.S. 714 (1981), and *State v. Larson*, 653 So.2d 1158 (La. 1995). Our review of those cases show that they are factually dissimilar and do not address specific issues that are comparable to the instant case.

[12] La. R.S. 26:90(J) allows for the revocation of suspension of a permit for violations of La. R.S. 26:90 which includes offenses such as selling alcoholic beverages to persons under the age of twenty-one years, selling alcoholic beverages to intoxicated persons, permitting visitors under the age of eighteen, permitting prostitution, conducting illegal gambling, prohibiting the playing of "unreasonably intrusive or offensive" music, or selling "all you can drink" alcoholic beverages after the hour of 10:00 p.m.

law."  However, it is the language "all applicable laws" that the ATC misconstrues. While the ATC has the authority to enforce violations of Title 26 laws, the prohibited actions in the governor's mandate clearly do not fall under Title 26 alcohol violations.

Although the Notice of Suspension states that agents observed Table and Taps failing to follow 17 JBE 2021 Modified Phase 2 guidelines, it stated the violations in terms of Title 26 offenses: "Business has failed to maintain permit qualifications of good character, has practiced improper conduct that violates a state mandate and has failed to maintain sanitary conditions for failure of complying with health guidelines, all of which endangers the health, safety, and welfare of the public."  The Notice specifically claims that Table and Taps violated the following statutes: La. R.S. 26:90(A)(13) and R.S. 26:286(A)(13)(f)[13] "for permitting ... improper conduct or practices on the licensed premises;"  La. R.S. 26:90(A)(9) "for having unclean and unsanitary conditions on the premises;" and La. R.S. 26:91(A)(l) and R.S. 26:287(A)(8)[14] "for failing [to] maintain qualifications required in R.S.26:80 and 26:280.[15]"

La. R.S. 26:90(A)(13) prohibits "any disturbance of the peace or obscenity, or any lewd, immoral, or improper entertainment, conduct, or practices on the licensed premises." The appellee claims that the ATC improperly paraphrased the statute.  It does appear from the plain language of the statute that "lewd, immoral, or improper" are to be construed together, as the words are defined under La. R.S. 26:90(B) and (G), "lewd, immoral, or improper entertainment" as "acts or

---

[13] La R.S. 26:90 and 26:286 are virtually identical provisions with La. R.S. 26:286 applying to dealers in beverages of low alcoholic content and La. 26:90 dealing with dealers of all alcoholic beverages.  For simplicity, this section will refer only to the provisions of 26:90.

[14] La R.S. 26:91 and 26:287 are virtually identical provisions with La. R.S. 26:287 applying to dealers in beverages of low alcoholic content and La. 26:91 dealing with dealers of all alcoholic beverages.  For simplicity, this section will refer only to the provisions of 26:91.

[15] La R.S. 26:80 and 26:280 are virtually identical provisions with La. R.S. 26:280 applying to dealers in beverages of low alcoholic content and La. 26:80 dealing with dealers of all alcoholic beverages.  For simplicity, this section will refer only to the provisions of 26:80.

conduct" of sellers, servers, and hostesses being unclothed or exposed, permitting the touching of intimate areas, and the showing of visual, pornographic reproductions. There is nothing in La. R.S. 26:90 to put a permit holder on notice that violating the COVID restrictions in the governor's proclamation would be considered "lewd, immoral, or improper entertainment, conduct, or practices." Furthermore, to allow "improper" to stand by itself would encompass subjective conduct without a standard to put a person of "ordinary intelligence" on notice and would implicate constitutional issues of vagueness and arbitrary and discriminatory application. *See Med Exp. Ambulance Serv., Inc. v. Evangeline Par. Police Jury,* 96-0543 (La. 11/25/96), 684 So.2d 359, 367-68 (ordinances will be considered vague if no standard conduct is specified; ordinances must provide sufficient clarity to remove the decision of whether to grant or deny a permit from the police jury's subjective whim). This Court should interpret this statute to preserve its constitutionality as it is presumed the Legislature acts within its constitutional authority in enacting legislation. *M.J. Farms, Ltd. v. Exxon Mobil Corp.*, 07-2371 (La. 7/1/08), 998 So.2d 16, 31. Therefore, to find this statute constitutional, we cannot interpret "improper conduct" to include violations of the proclamation's COVID restrictions.

La. R.S. 26:91 allows the commissioner to suspend or revoke any permit "if the applicant or any of the persons who must possess the same qualifications failed to possess the qualifications required in R.S. 26:80 at the time of application or fails to maintain such qualifications during the licensed year." The ATC cited Table and Taps for failing to meet the qualifications listed in La. R.S. 26:80(A) which include being a "person of good character and reputation and over eighteen years of age." While this term is not defined, other qualifications and considerations include: being a citizen and resident of the state of Louisiana; being the owner or lessor of the premises; not having been convicted of distributing or

possessing with intent to distribute controlled substances; not having been convicted of a felony or prostitution offenses, contributing to the delinquency of a juvenile or "keeping a disorderly place"[16]; not having a prior permit or license revoked or a conviction involving sale or service of alcoholic beverages"; and not owing delinquent sales taxes, penalties, or interest.

While the ATC claims that failing to abide by the proclamation is conduct indicative of character and reputation, these words are not defined by the statute except to state that an "arrest" may be taken into consideration for good character or reputation. Table and Taps was cited, but not arrested for any offense. Furthermore, it is should be noted that more comparable qualifications and conditions in La. R.S. 26:80(A)(9) and (10) specifically mention not having "been adjudged by the commissioner, or convicted by a court of violating any of the provisions of this Chapter," and not having been "convicted of violating any municipal or parish ordinances adopted pursuant to the provisions of this Chapter." Not only are proclamations by the Governor not mentioned, this section would require a conviction or adjudication of a violation of Title 26 provisions. In this case, Table and Taps was cited but not adjudged by the Commissioner when their permit was summarily suspended.

Furthermore, as with the statute above, a claim that a person of "ordinary intelligence" would be put on notice that allowing patrons to stand and congregate while consuming alcohol, dance, and not wear a face covering in compliance with the governor's emergency proclamation COVID restrictions, would implicate the "good character" requirement involves constitutional issues of vagueness and unfettered discretion. When questioned by the trial court judge at the hearing as to the definition of "good character" in La. R.S. 26:80, counsel for the ATC stated at

_____

[16] The statute notes however that a conviction may not automatically disqualify an applicant if the felony was not a crime of violence. La. R.S. 26:80(F).

the hearing "there is nothing in the law that actually defines good character and reputation." Therefore, this Court cannot find that the ATC has the discretion to revoke a permit for lack of good character to encompass a citation for violations of the proclamation.

The ATC's notice also cited Table and Taps "for fail[ure] to maintain sanitary conditions for failure of complying with current health guidelines." While La. R.S. 26:90(A)(9) does have a provision for failing "to keep the premises clean and sanitary," this seems to encompass the failing of a health inspection for violations of the sanitary code whose enforcement falls under the exclusive jurisdiction of the state health officer and office of public health. *See* La. R.S. 40:5. The notice's reference to current health guidelines includes the conduct listed in the governor's proclamation. Thus, it is clear that the ATC is relying on general provisions of Title 26 to encompass the specific conduct prohibited in 17 JBE 2021.

By way of contrast, a review of the enabling statutes for the entities expressly authorized by the legislature to enforce 17 JBE 2021, very specifically demonstrate their authority to protect public health and ensure safety. For example, La. R.S. 40:1563(4), applicable to the state fire marshal, provides:

> The fire marshal shall remain responsible for all institutional occupancies requiring a state or federal license, detention, colleges, universities, state-owned and state-leased buildings, and schools where applicable, and the applicable federal and state life safety codes shall be the codes applying to these facilities.

17 JBE 2021 also details how the state fire marshal should act according to his mandate. The customer capacity for businesses, or "occupancies" who stayed open during the effective dates of the proclamation were determined in reference to findings made and set by the State Fire Marshal. Also, under subsection C(5), any plans by a business to reopen were to be submitted to the State Fire Marshal with

"specific proposals for occupancy and sanitization." In reviewing any plans submitted, the State Fire Marshal was required to consult with the Louisiana Department of Health ("LDH").

17 JBE 2021 is also specific as to areas of enforcement that fell to the LDH. For example, §1(C) authorized the LDH to take actions under the Louisiana Health Emergency Powers Act and "any and all actions authorized thereto under Titles 29 and 40 of [La. R.S.] and under the State Sanitary Code (LAC Title 51) in relation to this public health emergency." Such an action clearly falls within the LDH's mandate as defined in its own enabling statute, found at La. R.S. 40:3, which provides:

> The state health officer shall at all times take all necessary steps to execute the sanitary laws of the state and to carry out the rules, ordinances, and regulations as contained in the state sanitary code. He may issue warrants only to arrest or prevent epidemics or to abate any imminent menace to the public health.

Under La. R.S. 29:769, the LDH also serves in an advisory capacity to the Governor's Office of Homeland Security and Emergency Preparedness, to help perform certain actions during a declared state of emergency, including:

> (1) To close, direct and compel evacuation of, or to decontaminate or cause to be decontaminated any facility of which there is a reasonable cause to believe that it may endanger the public health.

Finally, 17 JBE 2021 §2 (D), pursuant to La. R.S. 14:329.6, enabled the chief law enforcement officer of any political subdivision to, in order to protect life and property and to bring the emergency situation under control, promulgate orders for any provision therein, including a local curfew from 10:00 p.m. to 5:00 a.m.

Therefore, we find no merit to the second assignment of error.

### *Exclusive Penalty for Violations*

The ATC's fourth assignment of error is that the trial court erred in ruling that the exclusive penalty for violations of 17 JBE 2021 is found in La. R.S. 29:724(E) alone. La. R.S. 29:724(E) provides the punishment of "fine [of] not

more than five hundred dollars or confined in the parish jail for not more than six months, or both" for violations of any order, rule, or regulation pursuant to the Louisiana Homeland Security and Emergency Assistance and Disaster Act. The ATC argues on appeal that it was authorized to take administrative action against, and impose penalties upon Table and Taps pursuant to its authority under La. R.S. 26:171, to assess a penalty of a fine "not less than one hundred dollars not more than five hundred dollars or imprisoned for not less than thirty days nor more than six months, or both" and La. R.S. 26:91, to suspend or revoke permits. While the ATC does have authority to impose penalties for violations of the provisions of Title 26, we find that the conduct sought to be penalized herein does not fall within Title 26's alcohol violations, but, rather, is conduct prohibited by the governor's mandate for which La. R.S. 29:724(E) sets forth the appropriate punishment. Thus we find no merit to this assignment of error.

## *Conclusion*

In determining that the trial court did not abuse its discretion in granting the appellees, 5216 Operations, LLC d/b/a 5216 Table and Taps' motion for a preliminary injunction, we find that the appellant, the Louisiana Department of Revenue, Office of Alcohol and Tobacco Control, lacked the authority under the governor's proclamations to enforce the COVID restrictions and overreached its own statutory authority in taking administrative action.[17] Accordingly, for the reasons stated above, the judgment of the trial court is affirmed.

**AFFIRMED**

---

[17] While a case challenging a statute or executive order may become moot if the challenged law has expired, this case did not challenge the governor's executive order, but the ATC's authority under Title 26 to enforce that order. Furthermore, the permissible penalty, La R.S. 29:724, is still in effect. Additionally, we find that this is not an abstract issue, but one that could re-arise in the event of an increase in the number of confirmed COVID-19 cases/hospitalizations, or a future emergency declaration.

5216 OPERATIONS, LLC D/B/A 5216
TABLE AND TAPS

VERSUS

STATE OF LOUISIANA, DEPARTMENT
OF REVENUE, OFFICE OF ALCOHOL
AND TOBACCO CONTROL

NO. 21-CA-520

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

**JOHNSON, J., DISSENTS WITH REASONS**

I, respectfully, dissent from the majority opinion. I would dismiss the appeal as moot for the following reasons.

In the instant matter, all of the issues fundamentally involve the enforcement of Governor John Bel Edwards' proclamation number 17 JBE 2021. The trial court granted the motion for preliminary judgment filed by 5216 Operations, LLC d/b/a Table and Taps and enjoined the Office of Alcohol and Tobacco Control ("ATC") from: enforcing Governor Edwards' proclamations against Table and Taps related to restaurant restrictions enacted as a result of the COVID-19 public health emergency; imposing any punishments against Table and Taps arising from enforcement of Governor Edwards' proclamations related to restaurant restrictions that are more punitive than those imposed by La. R.S. 29:724(E); and enforcing the terms and conditions contained in the February 26, 2021 Commissioner's Order between ATC and Table and Taps that resulted from alleged violations of the proclamations. As a basis for the rulings, the trial judge orally found that 17 JBE 2021 was not a law and enforcement under La. R.S. 26:792 is not appropriate.

An issue is "moot" when a judgment or decree on that issue has been "deprived of practical significance" or "made abstract or purely academic." *B&P Rest. Grp., LLC v. Delta Admin. Servs., LLC*, 18-442 (La. App. 5 Cir.

9/4/19); 279 So.3d 492, 498, *writ denied*, 19-1755 (La. 1/14/20); 291 So.3d 685, *quoting Cat's Meow, Inc. v. City of New Orleans through Dep't of Fin.*, 98-601 (La. 10/20/98); 720 So.2d 1186.  An issue is also moot when "there is no reasonable expectation that the alleged violation will recur and when interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Jefferson Par. Hosp. Serv. Dist. No 2 of Jefferson v. Hosp. Serv. Dist. No. 1 of Par. of St. Charles*, 16-702 (La. App. 5 Cir. 4/12/17); 218 So.3d 696, 704, *quoting Khosravanipour v. Department of Transportation and Development*, 93-2041 (La. App. 1 Cir. 10/7/94); 644 So.2d 823, 826.

According to the evidence in the appellate record, proclamation number 17 JBE 2021 expired on March 3, 2021.  A case challenging a statute, executive order, or local ordinance usually becomes moot if the challenged law has expired or been repealed.  *Spell v. Edwards*, 962 F.3d 175, 179 (5th Cir. 2020).  Because the proclamation at issue has expired, I find that a determination of whether ATC can now enforce that proclamation is moot.  Therefore, I would dismiss the appeal.

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

NANCY F. VEGA
CHIEF DEPUTY CLERK

SUSAN S. BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**APRIL 6, 2022** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT
REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 21-CA-520

### E-NOTIFIED

24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE SHAYNA BEEVERS MORVANT (DISTRICT JUDGE)
JILL A. GAUTREAUX (APPELLEE)          JON FRANCIS CARMER, JR. (APPELLANT)          BENJAMIN W. WALLACE (AMICUS)
ELIZABETH B. MURRILL (AMICUS)

### MAILED

HEATHER M. ROYER (APPELLANT)          HONORABLE JEFFREY M. LANDRY
LINDA PHAM-KOKINOS (APPELLANT)        (AMICUS)
ATTORNEYS AT LAW                       ATTORNEY GENERAL
7979 INDEPENDENCE BOULEVARD            LOUISIANA DEPARTMENT OF JUSTICE
SUITE 101                             1885 NORTH 3RD STREET
BATON ROUGE, LA 70806                 6TH FLOOR, LIVINGSTON BUILDING
                                      BATON ROUGE, LA 70802